**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald Lester PARRY, Defendant–Appellant.**

No. 05–30522.

United States Court of Appeals, Ninth Circuit.

Argued July 25, 2006.

Resubmitted March 2, 2007.

Filed March 14, 2007.

Reinhardt, Circuit Judge, dissented with opinion.

Frank R. Papagni, Jr., Esq., USEU—Office of the U.S. Attorney, Eugene, OR, for Plaintiff–Appellee.

William R. Sharp, Eugene, OR, for Defendant–Appellant.

Before: REINHARDT and GRABER, Circuit Judges, and LEW,* District Judge.

MEMORANDUM **

Defendant Ronald Lester Parry appeals his convictions and sentence for being a felon in possession of a firearm after previously having been convicted of three "serious drug offenses" in violation of 18 U.S.C. § 922(g)(1) and § 924(e); possessing with intent to distribute methamphetamine, in

---

* The Honorable Ronald S.W. Lew, United States District Court for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

violation of 21 U.S.C. § 812(b)(2) & (c), Schedule II(c), § 841(a) & (b)(1)(c), and § 851; and possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) and § 921(a)(3).[1]

■ 1. On de novo review, *United States v. Meek*, 366 F.3d 705, 711 (9th Cir.2004), we conclude that the district court did not err by refusing to suppress the evidence retrieved after the traffic stop. The police officer had probable cause to stop Defendant's truck because he had reasonable suspicion that Defendant's passenger was not wearing a seatbelt, which is a crime in Oregon. *See* Or.Rev. Stat. § 811.210(1)(d); *United States v. Lopez–Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000) (describing criteria for reasonable suspicion). The officer testified that he saw that the passenger was not wearing a seat belt before he pulled over Defendant's truck. The Affidavit for Probable Cause Determination does not contradict that testimony because it says that the passenger "sat up and put her seatbelt on as the vehicle was coming to a stop," which can suggest that first she sat up, the police officer started to pull Defendant over, and then the passenger put on her seatbelt as the truck pulled off the road. Additionally, the officer reasonably suspected that Defendant was driving under the influence of intoxicants. *See* Or.Rev.Stat. § 813.010 (defining crime).

■ 2. We review for abuse of discretion, *United States v. Nguyen*, 88 F.3d 812, 818 (9th Cir.1996), a district court's decision to bifurcate a trial, and we conclude that it did not err. The district court's decision to bifurcate the trial so that the Armed Career Criminal Act charge—being a felon in possession of a handgun and having previously committed three "serious drug offenses"—was heard after Defendant's other two charges was in accordance with our case law. *Id.* at 815.

■ 3. We review for abuse of discretion, *United States v. Ramirez–Robles*, 386 F.3d 1234, 1240 (9th Cir.2004), *cert. denied*, 544 U.S. 1035, 125 S.Ct. 2251, 161 L.Ed.2d 1063 (2005), a district court's decision to admit evidence of prior bad acts, and we conclude that there was no error. Evidence of Defendant's two prior convictions for delivery of methamphetamine were admissible under Federal Rule of Evidence 404(b): (1) They proved a material element of the offense for which Defendant was charged—possessing methamphetamine with intent to distribute—because Defendant claimed that he had nothing to do with the drugs, but his prior convictions were for similar conduct, suggesting that he had knowledge and intent, *Ramirez–Robles*, 386 F.3d at 1242; (2) the current conviction is similar to his prior convictions, especially because in all cases Defendant used a very unusual method of transporting methamphetamine, in vials instead of baggies, *id.* at 1243; (3) there was sufficient evidence that Defendant committed the prior crimes because he pleaded guilty to them, *id.*; (4) Defendant's prior convictions were not too remote in time, because they occurred between three and four years before the current conviction, *id.*; and (5) the district court did not abuse its discretion by determining that their probative value outweighed any prejudicial effect under Federal Rule of Evidence 403.

■ 4. On de novo review, *United States v. Piccolo*, 441 F.3d 1084, 1086 (9th

---

**1.** One of Defendant's challenges to his sentence has been dealt with in an opinion published this date.

Cir.2006), we hold that the district court did not err in concluding that Defendant was a "career offender" under U.S.S.G. § 4B1.1. The question whether Defendant's prior convictions qualify as predicate offenses under § 4B1.1 is a legal one and, therefore, the elements of that guideline did not have to be pleaded or proved to a jury beyond a reasonable doubt. *United States v. Brown*, 417 F.3d 1077, 1079–80 (9th Cir.2005) (per curiam).

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that evidence of Parry's prior convictions for delivery of methamphetamine was admissible under Rule 404(b) to show "knowledge and intent." *See* mem. dispo. at 482. Critical to the majority's resolution of this issue is the fact that, in both Parry's prior convictions and the instant case, the methamphetamine at issue was packaged in glass vials, a storage method the majority calls "very unusual." *Id.* At the time the district court denied Parry's motion in limine to exclude evidence of the prior convictions, the government did not mention the vials, let alone offer any evidence that the use of vials to package methamphetamine is unusual; nor did it argue that the use of vials, if indeed unusual, would render the evidence of the prior convictions admissible under 404(b). In denying Parry's motion, the district court did not mention the vials, explaining only that admission of the prior convictions does "seem appropriate under [the standard of *United States v. Ramirez–Robles*, 386 F.3d 1234 (9th Cir.2004) ], the ones for delivery of methamphetamine, to prove knowledge of methamphetamine traffic, and the nexus between methamphetamine trafficking and guns".

On the basis of the evidence and arguments before it at the time it ruled on Parry's motion in limine, the district court's ruling was an abuse of discretion. Parry's prior convictions do not help prove knowledge (or intent) within the meaning of our precedents. Indeed, knowledge— especially "knowledge of methamphetamine trade"—was not even at issue in Parry's case. Parry's is not a case like *Ramirez–Robles* or *United States v. Martinez*, 182 F.3d 1107 (9th Cir.1999), in which a defendant, caught in the middle of a drug transaction, claims ignorance of the criminal nature of the activities in which he was engaged. Parry never argued that he was unfamiliar with methamphetamine or that he would not recognize the drug if he saw it. Instead, Parry testified insistently that the bag containing the drugs was not his but belonged to his passenger, Carrie Peel. Thus, the issue on which this case turns is not really an issue of Parry's "knowledge" or "intent" at all, but one of simple possession. Did the bag belong to Parry or to Carrie Peel, an acknowledged methamphetamine user? Parry's prior convictions are not relevant as to that question except through the impermissible inference that, because he possessed and distributed methamphetamine before, he must have been plotting to do it again.

The majority seeks to rescue the district court's erroneous ruling by relying on the most tenuous of evidence subsequently adduced at the trial suggesting that glass vials are very rarely used to package methamphetamine (and therefore that they are something of a "signature" attributable to Parry). The only evidence to that effect, however, came from Peel, Parry's passenger on the night of his arrest, the other person to whom the bag may have belonged. Peel was asked on direct examination to consider, based on her experiences as a drug user, how often she encounters vials instead of baggies when

buying methamphetamine. Peel responded cooperatively that she "[n]ever" buys methamphetamine in vials and that vials are "[p]retty unusual." But Peel had every reason to help the government establish that the bag containing the drugs belonged to Parry. If it didn't, she would be the proper defendant and would face a maximum 20–year sentence. Her testimony can hardly be considered credible enough, without any corroboration, to support the conclusion that Parry's prior convictions were admissible under 404(b). Moreover, no foundation was laid to show that Peel was qualified to testify as an expert witness on methods of distribution of methamphetamine. At most she could testify to her experience with her supplier. With so shaky a basis for affording relevance to the vials, the evidence of Parry's prior convictions has a sharply limited probative value that is substantially outweighed by its highly prejudicial potential. See Fed.R.Evid. 403. Nor was the district court's error harmless, as, absent Peel's self-interested testimony, there was no other evidence of who possessed the bag.

Even if Peel's testimony were deemed to be credible and sufficient to establish that vials are only rarely employed in methamphetamine transactions, the majority is incorrect in concluding that the presence of vials in the instant case would tend to show Parry's "knowledge and intent." Mem. dispo. at 482. Instead, the 404(b) rationale that the majority seeks is "identity"—the theory that because the methamphetamine seized in the instant case was contained in vials, and because the use of vials is unusual, the fact that Parry has two prior convictions involving vials tends to make it more likely that the bag in this case belonged to him. But despite the fact that "identity"—that is, the identity of the bag's possessor—was the sole issue in the case, neither the majority nor the government ever makes the identity argument.

Thus I strongly doubt that we should consider it. See United States v. Kama, 394 F.3d 1236, 1238 (9th Cir.2005).

Had the rarity of vials in the methamphetamine trade been a matter of which the district court took notice based on its experience, I might feel differently about the result. The fact is, however, that there is nothing in the record or the briefs, apart from the testimony of a highly interested but far from knowledgeable, let alone expert, witness—testimony offered at trial well after the district court's evidentiary ruling—that hints or suggests that the use of vials is rare or that the trial judge may have had some knowledge of that fact as a result of his experience. We should not assume this questionable, though critical, fact on our own, particularly where our own experience does not permit us to do so. I dissent.