**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Fernando SANCHEZ–BIRRUETTA,
Defendant—Appellant.**

No. 04–30150.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 2005.

Decided March 18, 2005.

David Groff, Esq., USME—Office of the U.S. Attorney, Medford, OR, for Plaintiff–Appellee.

Donnal S. Mixon, AFPD, Federal Public Defender, Medford, OR, for Defendant–Appellant.

Before: HUG, BERZON, and BYBEE, Circuit Judges.

## MEMORANDUM *

Fernando Sanchez–Birruetta challenges his conviction for illegal reentry by a removed alien under 8 U.S.C. § 1326, arguing that the district court erred by admitting fingerprint identification testimony by Bureau of Immigration and Customs Enforcement fingerprint specialist Thomas Liszkiewicz. Sanchez–Birruetta also challenges his sentence under *United States v. Booker*,—U.S.—, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Because the facts of this case are known to the parties, we describe them here only as necessary.

## I. Admissibility of fingerprint evidence

### A. *Rule 702 &* Daubert

We review the district court's ruling admitting Liszkiewicz's expert testimony for abuse of discretion. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000).

Federal Rule of Evidence 702 [1] provides the operative standard for the admissibility of expert testimony, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), governs our application of Rule 702. Under *Daubert*, a district court must "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786. To determine reliability, a district court must analyze whether "good grounds" establish a sufficient amount of "evidentiary reliability" or "trustworthiness." *Id.* at 590–91 & n. 9, 113 S.Ct. 2786 (quotations omitted). "Good grounds" exist when "the reasoning or methodology underlying the testimony is scientifically valid and ... can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. 2786.

In *Daubert*, the Court suggested several factors that often play a role in a Rule 702 inquiry, but cautioned that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." *Id.* at 593, 113 S.Ct. 2786. The *Daubert* factors are: (1) "whether [a theory or technique] can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation;" and (5) "general acceptance ... of a relevant scientific community." *Id.* at 593–94, 113 S.Ct. 2786 (quotations and citations omitted).

District courts are to apply *Daubert* via "case-by-case review rather than [ ] gener-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Rule 702 provides:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an ex-

pert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

al pronouncement[s] that" particular forms of expert testimony are or are not reliable. *United States v. Prime,* 363 F.3d 1028, 1033 (9th Cir.2004); *vacated on other grounds by* —— U.S. ——, 125 S.Ct. 1005, 160 L.Ed.2d 1007 (2005). Even within categories of experts or evidence, "[t]oo much depends upon the particular circumstances of the particular case at issue" for Rule 702 rulings in certain cases to govern all similar cases. *Kumho Tire v. Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). We look, therefore, to the general *Daubert* standards described above and the specific facts of this case.

### B. Application to Sanchez–Birruetta

■ During the district court's *Daubert* hearing, the prosecutor presented evidence showing that the fingerprint identification evidence at issue satisfied the most relevant of the *Daubert* factors. During that hearing, one witness testified: Stephen Meagher, a fingerprint specialist with the Federal Bureau of Investigation (FBI). Meagher's testimony, along with his written declaration, sufficiently established that the theoretical propositions of fingerprint identification—that friction ridges are unique and permanent, and that they can adequately be compared to each other—are both testable via experimentation and that various studies (which the declaration cites in detail) have, in fact, tested these propositions and found them to be accurate.

Sanchez–Birruetta cited a National Institute of Justice solicitation for further research on these propositions, arguing that this solicitation shows that the crucial propositions of fingerprint identifications have not yet been tested. The solicitation does not, however, suggest any problems with the various studies cited by Meagher's declaration. In combination with his

testimony, those studies support the district court's ruling on this prong.

Further, Liszkiewicz based his identification of Sanchez–Birruetta on a comparison of rolled fingerprints. The evidence suggests that such comparisons are especially reliable. While fingerprint identification based on comparing *latent* fingerprints to rolled fingerprints has been the subject of some debate,[2] *see, e.g.,* Robert Epstein, *Fingerprints Meet* Daubert: *The Myth of Fingerprint "Science" is Revealed,* 75 S. CAL. L.REV. 605 (2002), the evidence suggests that identifications based on comparison of two sets of rolled fingerprints are extremely reliable. Meagher's testimony discussed a FBI study in which fingerprint examiners and computers compared 50,000 rolled fingerprints to each other and found no false positive identifications. Sanchez–Birruetta offered no evidence disputing this study or suggesting that *any* significant error rate exists in rolled fingerprint identifications.

Additionally, Meagher testified regarding the FBI's procedures for making fingerprint identifications. While Sanchez–Birruetta cross-examined Meagher as to whether these standards were the best possible ones, he did not introduce evidence that alternative standards were required to ensure reliability, or that the FBI's standards were not followed in this case.

The evidence is sufficient to support the district court's decision to admit Liszkiewicz's testimony. The district court did not abuse its discretion in doing so.

### II. Sentencing

■ The district court found that Sanchez–Birruetta had been convicted in 1994 for delivery of a controlled substance, which triggered a sixteen-level enhance-

---

**2.** Applying a case-specific analysis, we, of course, do not express any opinion on the admissibility of latent fingerprint identification evidence.

ment under United States Sentencing Guideline § 2L1.2(b)(1)(A). This enhancement did not violate the Sixth Amendment. *United States v. Quintana–Quintana,* 383 F.3d 1052 (9th Cir.2004). The district court, however, treated the Guidelines as mandatory when, under *Booker,* they are advisory. *See* —— U.S. at ——, —— – ——, 125 S.Ct. at 745, 756–57. At oral argument, both parties asserted that remanding this case to the district court for resentencing is appropriate. On remand, the district court shall sentence Sanchez–Birruetta according to the advisory Guidelines and the considerations outlined in *Booker* and 18 U.S.C. § 3553(a).

The judgment is AFFIRMED, the sentence is VACATED, and this case is REMANDED for resentencing.